E-FILED
Tuesday, 14 October, 2014 11:12:24 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BOBBY BROWN, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | 11-CV-3195 |
| EUGENE MCADORY, JOSEPH HANKINS, CURTIS PARSONS, TARRY WILLIAMS, SHAN JUMPER, SHARLENE CARAWAY, and JOSEPH PROCTOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION**

SUE E. MYERSCOUGH, U.S. District Judge.

Plaintiff proceeds pro se from his detention in the Rushville Treatment and Detention Center pursuant to the Illinois Sexually Violent Persons Act. He pursues claims arising from the conditions he endured before and after disciplinary proceedings on two different occasions, one in 2010 and the other in 2011. Defendants have moved for summary judgment. At this stage, the evidence is viewed in the light most favorable to Plaintiff, with material factual disputes resolved in Plaintiff's favor. Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986). Looking at the record in that way, summary judgment must be denied.

FACTS

The record, drawing inferences in Plaintiff's favor, shows that Plaintiff received a disciplinary ticket on July 15, 2010, for arguing with a security officer. On July 22, 2010, Plaintiff appeared before the behavior committee, a group of three individuals who decide whether and what kind of punishment a resident will receive for an infraction. Defendants Jumper and Proctor were acting on the behavior committee that day. The committee found Plaintiff guilty of a minor rule violation—insolence— and down-graded Plaintiff's status to "close status" for three days, which meant that Plaintiff would be moved from his regular room to a room with less property and fewer privileges. Plaintiff felt this punishment was unfair because the minor violation was not his third minor violation as the committee had maintained. According to Plaintiff's count, the minor violation was only his second minor violation.

Plaintiff refused to move from his room to serve out his punishment. Because of his refusal, Plaintiff was escorted to a different unit ("special management"), placed on "temporary special

status," and written a ticket for "interfering with facility operations." According to Plaintiff, temporary special status generally means an empty cell with a mattress and some hygiene supplies such as a toothbrush, toothpaste, shower shoes, a towel, and some soap. Temporary special status typically lasts a few days until the resident appears before the behavior committee.

Plaintiff was placed on temporary special status on July 22, 2010, with only the clothes on his back, the shoes on his feet, and a mattress in the cell. He received no hygiene supplies, no writing supplies, no legal or other property, and was not allowed any phone calls or other communication with anyone, except with whomever came to check on him. On July 27, 2010, Plaintiff appeared before the behavior committee. Dr. Jumper was a part of the behavior committee that day. The behavior committee found Plaintiff guilty and demoted Plaintiff to close status for 10 days. Though not in this record, the Court's understanding is that close status allows a resident to have some property and also allows for some time out of the cell and communication with family. However, Plaintiff received nothing: for the duration of his purported close status, Plaintiff had no property, writing supplies, clothing, or hygiene supplies. Nor

could he communicate with anyone other than who passed by his room. Plaintiff asserts that he told Defendants Jumper and Hankins about these conditions at the behavior committee on July 27, 2010, and that he again told Jumper, Hankins, and Proctor two days later on July 29, 2010, at another behavior committee meeting. Plaintiff was allowed to return to his room on August 8, 2010.

The second incident occurred on March 24, 2011, when Plaintiff was placed on temporary special status for allegedly threatening staff. Plaintiff was not informed of the specifics of the alleged threats or told who wrote the ticket. This time Plaintiff had no mattress, in addition to having no other property and no ability to communicate with anyone except for staff who visited Plaintiff's cell. Defendant Proctor checked on Plaintiff that day to try to determine whether Plaintiff posed a threat to himself or others. Plaintiff asked Proctor why Plaintiff had no mattress and refused to speak to Proctor until a mattress was provided. Defendant Proctor put Plaintiff on "mental health II status," which required monitoring by staff every 15 minutes. According to Plaintiff, his repeated requests for a mattress, cover, and hygiene supplies over the

following days were refused. Defendants assert that Plaintiff was offered these items and he refused, but Plaintiff denies this.

On March 28, 2011, Plaintiff appeared before the behavior committee, which included Defendants Proctor and Caraway that day. According to Plaintiff, Plaintiff told Proctor and Caraway about his lack of a mattress, basic hygiene supplies, and property, but they did not respond. The behavior committee found Plaintiff guilty, imposed seven days of close status, and demoted Plaintiff to "general status," the meaning of which is not disclosed in the record.

ANALYSIS

Defendants argue that the deprivations suffered by Plaintiff were not objectively serious enough to violate the Constitution, citing cases in which the conditions suffered by prisoners were much worse and found not to violate the Constitution. Even for detainees like Plaintiff, the condition must be objectively serious. *See Sain v. Wood*, 512 F.3d 886 (7th Cir. 2008)(peeling paint, foul odor, lack of air conditioning, and cockroaches were not objectively serious enough to violate U.S. Constitution).

The Court cannot confidently conclude as a matter of law that the conditions Plaintiff endured were not objectively serious. For

about 18 days in the 2010 incident, Plaintiff had only a mattress, the clothes on his back, and the shoes on his feet.  He had no ability to communicate to those outside the facility or to employees within the facility who did not stop by his cell.  The inability to inform others of alleged abuse potentially fosters abuse.  For 11 days in the 2011 incident Plaintiff endured the same conditions but did not even have a mattress.  The Court cannot rule out a due process claim based on this record.  Further, while internal rules do not set the constitutional standard, the violation of rules requiring Plaintiff to have certain property with him could be relevant to Defendants' motivation.

Plaintiff also has an arguable First Amendment claim based on his inability to communicate internally or externally.  *See* Kaufman v. McCaughtry, 419 F.3d 678 (7th Cir. 2005)("Inmates have a First Amendment right to both send and receive mail . . . .")(citations omitted).  Plaintiff had no writing utensils or supplies and was unable to phone or otherwise contact anyone.  A legitimate government reason might support these restrictions, but the Court does not see one on this record.

Plaintiff may also have a procedural due process claim based on his placement on temporary special status without due process. Higgs v. Carver, 286 F.3d 437 (7th Cir. 2002)(citations omitted)("[a] pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less. . . . But no process is required if he is placed in segregation not as punishment but for managerial reasons."). Had Plaintiff received a mattress and basic hygiene supplies, such short-term placement would not trigger procedural due process protections. But Plaintiff did not receive those minimal necessities. The extent of each Defendant's knowledge of those conditions and ability to correct the problem is a jury question on this record.

Additionally, Plaintiff arguably has a procedural due process claim that he was unable to marshal an effective defense with regard to the 2011 disciplinary ticket without adequate notice of the facts underlying the charge and the identity of the person who wrote the ticket. The Court cannot determine from the record whether Plaintiff suffered an "atypical and significant" deprivation from the punishment on that ticket. If he did, he was entitled to adequate

notice of the facts underlying the charges and a meaningful opportunity to defend himself. Thielman v. Leean, 282 F.3d 478, 484 (7th Cir. 2002)(punishment must be an "'atypical and significant deprivation'" to trigger procedural due process protections)(quoted cite omitted). Some of these claims might be amenable to a directed verdict at trial, but not enough information is in the record to make the decision on summary judgment. For the same reason, qualified immunity is not appropriate. Defendants have not ruled out the possibility that Plaintiff suffered an objectively serious deprivation or an infringement of his First Amendment rights.

Plaintiff has failed to establish supplemental state law claims for battery or "corporal punishment." A battery occurs when someone intentionally touches another without the other's consent. Kling v. Landry, 292 Ill.App.3d 329 (2d Dist. 1997). "Corporal punishment" in this context means the use of force as a punishment for a disciplinary infraction. The facts of this case do not fit those definitions. The section cited by Plaintiff, 730 ILCS 5/3-8-7(b)(1) also prohibits "restrictions on diet, medical or sanitary facilities, mail or access to legal materials" as prison discipline. However, no

private right of action exists to enforce that statute. *See* Montes v. Taylor, 985 N.E.2d 1037, 1042-43 (4th Dist. 2013)(Unified Code of Corrections provides guidance to officials, not rights for inmates beyond the Constitution).

**IT IS ORDERED:**

1. Defendants' motions for summary judgment are denied (57, 65).

2. A final pretrial conference is scheduled for November 12, 2014 at 3:00 p.m.. Plaintiff shall appear by video conference. Defense counsel shall appear in person.

3. The jury selection and trial are scheduled for February 3, 2015, at 9:00 am.

4. An agreed, proposed final pretrial order is due November 5, 2014.

5. The Court will send out proposed jury instructions and voir dire for discussion at the final pretrial conference.

6. The following are due November 5, 2014: an agreed, proposed final pretrial order; motions in limine; additional or alternate instructions.

7. The parties must have their numbered exhibits with them at the final pretrial conference and must have provided a copy of those exhibits to the opposing party before the final pretrial conference. If a party plans to object to an exhibit, that party must file the exhibit at issue before the final pretrial conference.

**8. The clerk is directed to issue a video writ to secure Plaintiff's presence at the final pretrial conference.**

ENTER: October 14, 2014

FOR THE COURT:

                                               **s/Sue E. Myerscough**
                                                  SUE E. MYERSCOUGH
                                    UNITED STATES DISTRICT JUDGE